UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brandon J. Lunn, | ) | C/A No.    5:12-2706-MGL-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | Report and Recommendation |
| v. | ) | |
| | ) | |
| Sgt. Ragland, Lt. Robertson, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment filed on February 4, 2013. ECF No. 38. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on February 5, 2013 advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 41. Plaintiff responded to Defendants' Motion for Summary Judgment on February 2, 2013, ECF No. 45, and Defendants filed a reply to Plaintiff's response on February 27, 2013, ECF No. 49. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because these motions are dispositive, a Report and Recommendation is entered for the court's review.

I.    Factual Background

Plaintiff, Brandon J. Lunn, is an inmate housed at Perry Correctional Institution ("PCI"). ECF No. 1 at 2. Plaintiff filed his Complaint on September 20, 2012 alleging that Defendants

---
[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Sgt. Ragland and Lt. Robertson used excessive physical force towards him. *Id.* at 3. Specifically, Plaintiff contends that on June 20, [2012] he was in the shower and the mental health counselor came on the wing. *Id.* Plaintiff states that he started speaking to the mental health counselor about his "last incident of hanging." *Id.* Plaintiff contends that Defendant Ragland "came on the wing and stated that you nigg[\*\*]s need to kill you Fxxxxx self." *Id.* Plaintiff avers that he told Defendant Ragland "Fxxx you pig" and then Defendants Ragland and Robertson "started disrespecting" Plaintiff so Plaintiff "exploded with vigor language towards Sgt. Ragland & Lt. Robertson." *Id.* Plaintiff contends Defendants told him to "turn around to be cuff[ed]" and when he turned around Defendants "[were] too aggressive in harmful manner." *Id.* Plaintiff avers that while he followed Defendants' instructions that his towel began to fall from his shoulder. *Id.* Plaintiff contends that he tried to grab his towel with his "free hand" and "within seconds he was sprayed with chemical device called Sabre Red in the head and face area." *Id.* Plaintiff alleges that after [he] was sprayed in the face Defendant Ragland "reach[ed] through the shower flap and snatched [Plaintiff's] wrist and cuffed [him] with force." Plaintiff avers that once his wrists were secured in the handcuffs that he was "snatched and drugged to [his] cell" and "pushed against the wall." *Id.* Plaintiff argues that Defendants were intentionally hurting him. *Id.* Plaintiff contends that he was checked by a nurse but "she didn't check [his] vital signs or nothing." *Id.* Plaintiff contends that later that day he was sprayed two more times with chemical munitions, but of the three times he was sprayed, only one of those times was documented. *Id.* at 4. Plaintiff contends he was subsequently charged with "809 Threaten Inflict Harm on SCDC Official," but argues "how can [he] threaten them when [he] was in the shower [and] had chemical communication [sic] in [his] face." *Id.* Plaintiff argues that it is impossible to "swing through [the shower] flap standing straight up with one cuff on your arm, you've to do it at an

2

angle." *Id.* Plaintiff contends that since this incident he has been harassed and threatened and he "feels [his] life is in danger." *Id.* Plaintiff requests that the court separate him from Defendants and move Plaintiff to a different institution until this case is finalized; that Defendants be terminated "cause they abusing they call of duty as correctional officers"; and monetary damages for his pain and suffering. *Id.* at 5.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff.

*Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

### III. Analysis

#### A. Eleventh Amendment

Defendants contend that Plaintiff's actions against them should be dismissed as a matter of law to the extent they are sued in their official capacities.  ECF No. 38-1 at 13.  The undersigned agrees.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

As Defendants Ragland and Robertson are agents or employees of the State of South Carolina, when acting in their official capacities, they are not  "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663.  The State of South Carolina has not consented to be

sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

      B. Excessive Force

Defendants argue that they are entitled to summary judgment because Plaintiff cannot show that the use of force was maliciously and sadistically applied for the sole purpose of causing harm. ECF No. 38-1 at 2. Defendants contend that the force used in this case was "not excessive, but was necessary because of the actions of the Plaintiff." *Id.* Defendants offer their own affidavits to show that Defendant Robertson applied force "in order to gain compliance and to protect [Defendant] Ragland from potential harm." *Id.* at 5. Defendants also contend that they "reasonably perceived a threat by Plaintiff" and "used the least invasive means available" to counter the perceived threat. *Id.* at 5-6. Defendants attest that on June 20, 2012, a search was conducted of Plaintiff's cell while Plaintiff was taken to the shower. Ragland Aff. ¶ 4, ECF No. 38-2; Robertson Aff. ¶ 5, ECF No. 38-3. Defendants contend that some paperwork was removed from Plaintiff's cell "because it was determined to be contraband" and that Plaintiff became "agitated and verbally abusive" when he learned about the search. Ragland Aff. ¶ 4; Robertson Aff. ¶ 6. As a result of Plaintiff's behavior, Defendants Ragland and Robertson approached the shower Plaintiff was in "and instructed him to come to the door to be handcuffed." *Id.* ¶ 5; *Id.* ¶ 6. While Defendant Ragland was in the "process of placing handcuffs on the Plaintiff's right hand, the Plaintiff suddenly reached his left hand towards [Defendant Ragland's] hand." *Id.* ¶ 7; Id. ¶ 8. In response to Plaintiff's movements, Defendant Robertson "applied a short burst of chemical munitions to the Plaintiff in order to gain compliance." Robertson Aff. ¶ 9. The handcuffs were then placed on Plaintiff without further incident and Plaintiff was placed in his

5

cell. Ragland Aff. ¶ 8. Defendants attest that they "used only the minimal amount of force necessary by using chemical munitions to control the situation and the chemical munitions were used as a result of the Plaintiff's actions." *Id.* ¶ 9; Robertson Aff. ¶ 13. In his response to Defendants' summary judgment motion, Plaintiff contends that when he learned that his legal paperwork had been seized from his cell, "he began making attempts to informally resolve the situation." ECF No. 45 at 1. Plaintiff avers that Defendants "became very agitated at Plaintiff's legalese and they start[ed] to verbally abuse him." *Id.* at 2. Plaintiff contends that he "began to fear for his persons and he raised his hand to protect himself from possible attack" while Defendants were in the process of handcuffing him. *Id.* Plaintiff argues that he was then "pulled quickly against the shower door, causing him injury," and held "against the bar door of the shower stall" while Defendant Robertson "doused him with pepper spray." *Id.* Plaintiff argues that "the excessive use of force violated" his rights under the Eighth Amendment and that Defendants' motion should be dismissed because "there are genuine issues as to the material facts of Plaintiff's actions." *Id.* at 2-3.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendants acted "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321. The absence of significant injury alone, however, is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1179 (2010). The extent of the injury incurred is one factor indicative of whether the force used was necessary in a particular situation; however, if the force used was applied maliciously and sadistically, liability is not avoided simply because the prisoner "has the good fortune to escape without serious injury." *Id.* at 1179. As the Court noted in *Wilkins*, the issue is the nature of the force, not the extent of the injury.

Although Plaintiff's version of the event in question has evolved during the course of this litigation, Plaintiff has not been able to create a genuine issue of material fact concerning whether Defendants acted "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley*, 475 U.S. at 320-21. At a minimum, Plaintiff admits that he raised his hand as the Defendants were in the process of placing his handcuffs on, and that Defendants responded to Plaintiff raising his hand by pulling Plaintiff against the shower door and spraying him with chemical munitions. The undersigned has also reviewed the medical records related to this incident and the medical records show that

7

Plaintiff had no injuries as a result of this incident. ECF No. 38-5 at 11. The undersigned does not find that the amount of force utilized by Defendants was unnecessary or excessive. Accordingly, the undersigned recommends that Defendants be granted summary judgment.

### C. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. ECF No. 38-1 at 10-12. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case -- that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted -- then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their professional judgment, and that they performed the discretionary functions of their official duties in an objectively reasonable fashion. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment, ECF No. 38, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

April 3, 2013                                                                                  Kaymani D. West
Florence, South Carolina                                                       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

9